1

2

3

4                          UNITED STATES DISTRICT COURT

5                          NORTHERN DISTRICT OF CALIFORNIA

6

7    GENEVIEVE MAHONEY,                          Case No.  22-cv-02873-AMO

              Plaintiff,
8
                                                 **ORDER GRANTING MOTION TO**
         v.                                      **DISMISS**
9
                                                 Re: Dkt. No. 115
10   META PLATFORMS, INC.,

              Defendant.
11

12

13          This is a defamation case against Defendant Meta Platforms, Inc. ("Meta").  Before the

14   Court is Meta's Motion to Dismiss, which was heard before this Court on November 2, 2023.

15   Having read the papers filed by the parties and carefully considered their arguments therein and

16   those made at the hearing, as well as the relevant legal authority, the Court hereby **GRANTS** the

17   Motion, for the following reasons.

18                                    **BACKGROUND**

19   **A.    Factual History**

20          Plaintiff Genevieve Mahoney is a college student at Furman University who has an

21   Instagram account with the username @genmahoney19.  Mahoney attended what she describes as

22   a "Rally" to protest the results of the 2020 United States presidential election.  First Amended

23   Complaint ("FAC") ¶¶ 33, 59.  On January 6, 2021, at approximately 2:00 p.m. Eastern Time,[1]

24   Mahoney posted on her Instagram account the single image reproduced below and captioned it

25   "Our Capitol."

26   //

27

28   _____
     [1] All references to times herein are to Eastern Time.

United States District Court
Northern District of California



"Our Capitol"

FAC ¶¶ 62-63.

On that same day, "some protestors other than Genevieve," "commit[ted] crimes by breaching the Capitol and engaging in criminal activity." FAC ¶ 71. At about 7:00 p.m., Meta published an "Emergency News Statement" "to the public and groups and communities" on Facebook related to the events at the Capitol. FAC ¶ 86. Meta's Emergency News Statement read, in relevant part:

> . . . We are appalled by the violence at the Capitol today. We are treating these events as an emergency . . . For those of you who are wondering, here are the actions we're taking: First, we have been searching for and removing the following content:
> - Praise and support of the storming of the Capitol.
> - Calls to bring weapons to locations across the US—not just in Washington but anywhere in the US—including protests.
> - Incitement or encouragement of the events at the Capitol, including videos and photos from the protestors. At this point they represent promotion of criminal activity which violates our policies.
> - Calls for protests—even peaceful ones—if they violate curfew in DC.
> - Attempts to restage violence tomorrow or in the coming days.

FAC ¶ 86. Mahoney alleges that the third bullet of the Emergency News Statement, particularly suggesting that images from the protest "represent promotion of criminal activity," connected her to those who committed crimes at the Capitol by implying that all January 6 event attendees were engaging in criminal conduct. FAC ¶¶ 92, 99, 102. Meta "disabled and deleted" Mahoney's

United States District Court
Northern District of California

1    Instagram account almost a full week after the January 6 protests.  FAC ¶ 90.

2         One of the "groups" that purportedly received the Emergency News Statement was an

3    Instagram account called @fur.meme.  FAC ¶ 92.  An anonymous student from Furman

4    University operates the @fur.meme account, and the account is "well-followed" by students,

5    faculty, school officials, and alumni.  FAC ¶ 54.  Mahoney alleges that "@fur.meme posted a

6    series of posts recognizing the Emergency News Statement was referring to Genevieve and her

7    'Our Capitol' photograph."  FAC ¶ 98.  The FAC goes on to reproduce 11 screenshots of

8    @fur.meme's Instagram posts in the hours following the Emergency News Statement.  FAC ¶ 104

9    (*see* ECF 114 at 18-28).  One of the screenshots of @fur.meme's Instagram posts identifies

10   Mahoney by her Instagram handle, @genmahoney19, as having "attended this violent, pro-Trump

11   event" based on pictures she shared on her public Instagram account.



25   FAC ¶ 104.

26        None of the 11 screenshots of @fur.meme's Instagram posts mention the Emergency News

27   Statement.  FAC ¶ 104.  Plaintiff claims that @fur.meme's posts about her "severely damage[d]"

28   her "reputation within the Furman community."  FAC ¶ 108.

United States District Court
Northern District of California

1    **B.      Procedural History**

2           Mahoney originally filed this case in Tennessee state court on July 1, 2021, advancing

3    causes of action for (1) defamation (libel), (2) defamation (libel by implication), (3) defamation

4    (false light invasion of privacy), and (4) negligent infliction of emotional distress.  ECF 1-1.  Meta

5    removed the case to U.S. District Court for the Middle District of Tennessee on August 4, 2021.

6    ECF 1.  While in that District, Meta moved to dismiss the complaint.  ECF 19, ECF 20.

7    Concurrent with its motion to dismiss, Meta moved to transfer the case to this district.  ECF 13,

8    ECF 14.  Additionally, Plaintiff filed a motion to remand the case to state court.  ECF 24, ECF 28.

9    The Honorable William L. Campbell, Jr., of the Middle District of Tennessee denied Plaintiff's

10   motion to remand and granted Meta's motion to transfer the case to this district.  ECF 68, ECF 69.

11   In that order, he did not reach the motion to dismiss.

12          Following transfer, Judge Donato permitted Mahoney to file an amended complaint.  ECF

13   113.  Mahoney filed the FAC on March 2, 2023 (ECF 114), and Meta filed the instant Motion to

14   Dismiss on March 31, 2023 (ECF 115).  The case was reassigned to the undersigned during

15   briefing on the motion to dismiss.  ECF 117.

16                                         **DISCUSSION**

17          Meta's motion seeks dismissal of the FAC on any of the following three independent

18   bases: (1) Mahoney fails to state a claim for defamation, (2) Meta's conduct is immunized under

19   Section 230 of the Communications Decency Act, and (3) Mahoney's claim for defamation should

20   be stricken under California's anti-SLAPP statute because it seeks to punish Meta for its protected

21   speech activity.  Because the Court determines that Mahoney fails to state a claim for defamation,

22   it does not reach the parties' arguments regarding applicability of Section 230 of the

23   Communications Decency Act and defers ruling on the Anti-SLAPP motion.

24   **A.      Legal Standard**

25          A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal

26   sufficiency of the claims alleged in the complaint.  *Ileto v. Glock*, 349 F.3d 1191, 1199-1200 (9th

27   Cir. 2003).  Under Federal Rule of Civil Procedure 8, which requires that a complaint include a

28   "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ.

United States District Court
Northern District of California

1    P. 8(a)(2), a complaint may be dismissed under Rule 12(b)(6) if the plaintiff fails to state a

2    cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory.

3    *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).

4         While the court is to accept as true all the factual allegations in the complaint, legally

5    conclusory statements, not supported by actual factual allegations, need not be accepted.  *Ashcroft*

6    *v. Iqbal*, 556 U.S. 662, 678-79 (2009).  The complaint must proffer sufficient facts to state a claim

7    for relief that is plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 558-59

8    (2007) (citations and quotations omitted).  "A claim has facial plausibility when the plaintiff

9    pleads factual content that allows the court to draw the reasonable inference that the defendant is

10   liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citation omitted).  "[W]here the well-

11   pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

12   complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief."  *Id.* at 679.

13        Review is generally limited to the contents of the complaint, although the court can also

14   consider a document on which the complaint relies if the document is central to the claims asserted

15   in the complaint, and no party questions the authenticity of the document.  *See Sanders v. Brown*,

16   504 F.3d 903, 910 (9th Cir. 2007).  The court may consider matters that are properly the subject of

17   judicial notice, *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *Lee v. City of Los Angeles*,

18   250 F.3d 668, 688-89 (9th Cir. 2001), and may also consider documents referenced extensively in

19   the complaint and documents that form the basis of the plaintiffs' claims.  *See No. 84 Emp'r-*

20   *Teamster Jt. Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 925 n.2 (9th Cir.

21   2003). If dismissal is warranted, it is generally without prejudice, unless it is clear that the

22   complaint cannot be saved by any amendment.  *Sparling v. Daou*, 411 F.3d 1006, 1013 (9th Cir.

23   2005).

24   **B.    Defamation**

25        "Defamation is an invasion of the interest in reputation."  *Smith v. Maldonado*, 72 Cal.

26   App. 4th 637, 645 (1999).  A defamatory statement may be either written (libel) or oral (slander).

27   Cal. Civ. Code §§ 44, 45, 46.  Here, Mahoney alleges that Meta's written Emergency News

28   Statement, by attributing criminality to the events at the Capitol, constitutes defamation per se

5

1    because it is defamatory on its face "without the necessity of explanatory matter." Cal. Civ. Code

2    § 45a.  To prevail on a claim for defamation per se, Mahoney must prove that "a defendant

3    published a false statement to another person or persons, that those persons reasonably understood

4    the statements to be about the plaintiff, that the statements were defamatory on their face [], and

5    that the defendant failed to use reasonable care to determine the truth or falsity of the statement."

6    *Ellis v. Starbucks Corp.*, 2015 WL 5240042, at *4 (N.D. Cal. Sept. 5, 2015).

7            Meta argues that Mahoney's defamation claim falls short on three bases: (a) Meta's

8    Emergency News Statement did not refer to Mahoney, (b) Meta's Emergency News Statement

9    was not published to a third party who reasonably understood its allegedly defamatory meaning or

10   applicability to Mahoney, and (c) Meta's Emergency News Statement was not false or reasonably

11   susceptible to a defamatory meaning.  The Court addresses these three sub-points in turn.

12           **1.**      **Reference to Mahoney**

13           To state a defamation claim, the statement on "which the claim is based must specifically

14   refer to, or be 'of and concerning,' the plaintiff in some way." *Blatty v. N.Y. Times Co.*, 42 Cal.3d

15   1033, 1042 (1986).  "In order to satisfy this requirement, the plaintiff must effectively plead that

16   the statement at issue either expressly mentions [her] or refers to [her] by reasonable implication."

17   *Id.* at 1046 (citations omitted).  Under reference by reasonable implication, "a defamatory

18   statement that is ambiguous as to its target not only must be capable of being understood to refer

19   to the plaintiff, but also must be shown actually to have been so understood by a third party."

20   *SDV/ACCI, Inc. v. AT&T Corp.*, 522 F.3d 955, 959 (9th Cir. 2008).  Further, where the

21   purportedly defamatory statement refers to a large group of persons, California courts have

22   determined that "plaintiffs cannot show that the statements were 'of and concerning them,'"

23   especially where the group includes more than 25 members.  *Blatty*, 42 Cal.3d at 1046 (collecting

24   cases).  The issue of whether a statement can be reasonably interpreted as referring to a plaintiff is

25   a question of law for the court.  *SDV/ACCI, Inc.*, 522 F.3d at 959.

26           Here, Mahoney admits that she was not identified in the Emergency News Statement but

27   nevertheless claims it referred to her by reasonable implication because it identified "persons at

28   the January 6 protest and events at the Capitol earlier that day who engaged in specific behavior:

United States District Court
Northern District of California

1    protestors who posted photos on Meta's social media platforms." Opp. at 14 (ECF 116 at 14).

2    The challenged portion of the Emergency News Statement, however, referred to "videos and

3    photos from the protestors" – a group so large that the "of and concerning" requirement could not

4    plausibly be met under California law. *Cf. Blatty*, 42 Cal.3d at 1046 (stating that plaintiffs cannot

5    show that allegedly defamatory statements were "of and concerning them" when the statements

6    refer to a group or more than 25). Indeed, Mahoney describes in her pleading that "thousands of

7    people across the country traveled to the Ellipse in D.C. on January 6, 2021, to have their voices

8    heard and to peacefully and lawfully protest the Election and Certification Count." FAC ¶ 37.

9    Mahoney's claim fails because the Emergency News Statement refers to a group so large that it

10   cannot be construed as "of or concerning" her in any way. *Blatty*, 42 Cal.3d 1033, 1042.

11           Mahoney's argument additionally fails because she does not show that a third party

12   actually understood the Emergency News Statement to describe her photo as a representation or

13   "promotion of criminal activity." *See SDV/ACCI, Inc.*, 522 F.3d at 959; FAC ¶ 86. Mahoney does

14   not allege that the Emergency News Statement was published in any form on Instagram itself.

15   Further, Mahoney fails to draw any connection between Meta's statement on Facebook and

16   @fur.meme's statements on Instagram, much less that @fur.meme and other members of the

17   Furman University community understood Meta's statement to refer to her at all. In sum,

18   Mahoney fails to establish that Meta's Emergency News Statement specifically referred to her or

19   was understood by any third party as referring to her. Her defamation claim fails on this element

20   alone.

21           **2.      Publication to a third party who understood the statement as defaming**

22                    **Mahoney**

23           California courts define "publication" as a "communication to some third person who

24   understands both the defamatory meaning of the statement and its application to the person to

25   whom reference is made." *Ringler Assocs. Inc. v. Maryland Cas. Co.*, 80 Cal. App. 4th 1165,

26   1179 (2000).

27           Mahoney contends that Meta published the Emergency News Statement on Facebook "to

28   the general public on the Internet through its Facebook platform including the @fur.meme

United States District Court
Northern District of California

1    Instagram group." FAC ¶ 155.  Mahoney complains that the @fur.meme account "published a

2    series of posts recognizing the Emergency News Statement was referring" to her.  FAC ¶ 98.  But

3    the posts reproduced in the FAC show nothing of the sort.  FAC ¶ 104.

4         Mahoney fails to draw a nexus between (1) the Emergency News Statement and (2) the

5    @fur.meme Instagram posts that identified her as having attended events at the Capitol on January

6    6, 2021.  Mahoney argues in significant part that when Meta posted in its "Emergency News

7    Statement that protestors' photos at the Capitol events 'represent promotion of criminal activity,'

8    @fur.meme and others in this Instagram group seized upon the statement since it *linked* the

9    posting of photos at the U.S. Capitol with the 'promotion of criminal activity.'"  Opp. at 15 (ECF

10   116 at 15, emphasis in original).  But the FAC falls well short of alleging that @fur.meme and

11   others on the Instagram platform "seized" upon the Statement or even that they saw the Statement

12   issued on a different platform, Facebook.  Mahoney does not allege that the Emergency News

13   Statement was published directly to the @fur.meme Instagram account or even to the Instagram

14   platform.  Mahoney does not allege that the @fur.meme Instagram posts make any reference to

15   the Emergency News Statement, and the posts themselves show the opposite.  The @fur.meme

16   posts state that Mahoney was known to have attended the "violent, pro-Trump event" based on

17   "pictures [she] shared on [her] public Instagram account[]."  FAC ¶ 104.  The posts do not refer to

18   the Emergency News Statement, and it is not clear that the person(s) behind @fur.meme saw

19   Meta's statement at all.  FAC ¶ 104.  Mahoney does not allege that a single person (1) saw the

20   Emergency News Statement, much less understood its allegedly defamatory meaning towards her,

21   or who (2) legitimately read that allegedly defamatory meaning as applying to her.  Mahoney's

22   defamation claim fails on this second prong as well.

23        **3.      Falsity or susceptibility to a defamatory meaning**

24        To state a claim for defamation, "defamatory meaning must be found, if at all, in a reading

25   of the publication as a whole . . . Defamation actions cannot be based on snippets taken out of

26   context."  *Crowe v. County of San Diego*, 608 F.3d 406, 443 (9th Cir. 2010).  "The defamatory

27   character of language is measured 'according to the sense and meaning . . . which such language

28   may fairly be presumed to have conveyed to those to whom it was published.'"  *Balzaga v. Fox*

1    *News Network, LLC*, 173 Cal. App. 4th 1325, 1337 (2009).  If no "reasonable viewer could have

2    reasonably understood the statement in the alleged defamatory sense, the matter may be decided as

3    a question of law."  *Id.*

4    　　　　Mahoney contends that the Emergency News Statement is not only false, but libel per se

5    because it essentially accuses her of a crime.  *See* ECF 116 at 16 ("[p]erhaps the clearest example

6    of libel per se is an accusation of crime.") (quoting *Barnes-Hind, Inc. v. Superior Ct.*, 181 Cal.

7    App. 3d 377, 385 (1986)).    Particularly, Mahoney claims that the Emergency News Statement

8    was "false and untrue" because her photo did not "represent promotion of criminal activity."  FAC

9    ¶ 163.  She alleges that the Emergency News Statement is defamatory because, in her view, it

10   sweeps in not only criminal conduct at the Capitol but also peaceful protestors like herself.  *See*

11   FAC ¶¶ 164-65.

12   　　　　However, Mahoney fails to allege that any person would have reasonably "understood the

13   statement in the alleged defamatory sense" – i.e., that everybody who posted photos from the

14   protest was a criminal.  *Balzaga*, 173 Cal. App. 4th at 1337 (affirming ruling that no reasonable

15   viewer of news program could have understood it to have defamatory meaning).  Meta's statement

16   does not accuse Mahoney of a crime because it does not refer to her at all.  No reasonable reader

17   could have reasonably understood the Emergency News Statement in the alleged defamatory

18   sense, and the claim for defamation must be dismissed on this third basis as well.

19   **C.    Anti-SLAPP Motion**

20   　　　　"Under California's anti-SLAPP statute, a defendant may bring a special motion to strike a

21   cause of action arising from constitutionally protected speech or petitioning activity."  *Barry v.*

22   *State Bar of California*, 2 Cal.5th 318, 320 (2017); Cal. Code Civ. Pro. § 425.16.  California

23   courts generally apply a two-step process for analyzing an anti-SLAPP motion.  *Hilton v.*

24   *Hallmark Cards*, 599 F.3d 894, 903 (9th Cir. 2010).  "At the first step, the moving defendant bears

25   the burden of identifying all allegations of protected activity, and the claims for relief supported by

26   them."  *Baral v. Schnitt*, 1 Cal.5th 376, 396 (2016).  Only "[i]f the court determines that relief is

27   sought based on allegations arising from activity protected by the statute" is the second step

28   reached.  *Id.*  At the second step, "the burden shifts to the plaintiff to demonstrate that each

United States District Court
Northern District of California

1    challenged claim based on protected activity is legally sufficient and factually substantiated."

2    *Baral*, 1 Cal.5th at 396; *see also Hilton*, 599 F.3d at 903.

3            Meta brings a special motion to strike Mahoney's defamation claim because the claim

4    arises from the company's protected speech activity.  Mahoney initially opposes Meta's anti-

5    SLAPP motion on the basis that California procedural mechanisms are disallowed in federal court.

6    Mahoney ignores well-settled Ninth Circuit precedent on the issue.  An anti-SLAPP motion may

7    be brought against state law claims pending in federal court.  *See Gunn v. Drage*, 65 F.4th 1109,

8    1119 (9th Cir. 2023) ("[W]e have repeatedly affirmed the applicability of California's anti-SLAPP

9    statute in diversity cases."); *Planned Parenthood Fed'n of Am. v. Ctr. for Med. Progress*, 890 F.

10   3d 828, 834 (9th. Cir. 2018).  Mahoney is therefore incorrect regarding the availability of the

11   special motion to strike.

12           However, while California's anti-SLAPP provisions generally permit defendants to head

13   off lawsuits that challenge their protected activity in the early stages of a case by striking the

14   complaint without leave to amend, the procedural rules require a slightly different outcome in

15   federal court.  The Ninth Circuit has held that "granting a defendant's anti-SLAPP motion to strike

16   a plaintiff's initial complaint without granting the plaintiff leave to amend would directly collide

17   with Fed. R. Civ. P. 15(a)'s policy favoring liberal amendment."  *Verizon Delaware, Inc. v. Covad

18   Commc'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004).  If the court finds deficiencies in the claims

19   as pleaded, it may defer consideration of the anti-SLAPP motion pending the filing of an amended

20   complaint.  *See Verizon*, 377 F.3d at 1091 (holding that the district court did not err in deferring

21   consideration of anti-SLAPP motion pending receipt of an amended complaint and affirming

22   denial of anti-SLAPP motion to strike original complaint).

23           Here, the Court finds that Mahoney fails to state a claim for defamation.  Mahoney

24   requested leave to amend, and such amendment is not clearly futile at this stage.  Accordingly, the

25   Court defers consideration of Meta's anti-SLAPP motion pending the filing of an amended

26   pleading.  *See Verizon*, 377 F.3d at 1091 ("If the offending claims remain in the first amended

27   complaint, the anti-SLAPP remedies remain available to defendants.").

28

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONCLUSION**

For the foregoing reasons, the Court hereby **GRANTS** Meta's motion to dismiss the operative complaint for Mahoney's failure to state a claim for defamation.  The Court **DEFERS** ruling on the anti-SLAPP motion in favor of granting leave to amend.  Mahoney's amended pleading, if any, shall be filed no later than February 8, 2024.  No additional parties or claims may be added without leave of Court or stipulation of Defendant.

**IT IS SO ORDERED.**

Dated: January 6, 2024

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**