1  JACOB M. HEATH (STATE BAR NO. 238959)
   jheath@orrick.com
2  ORRICK, HERRINGTON & SUTCLIFFE LLP
   1000 Marsh Road
3  Menlo Park, CA  94025-1015
   Telephone:     +1 650 614 7400
4  Facsimile:      +1 650 614 7401

5  MELISSA LEVIN (STATE BAR NO. 328146)
   melissalevin@orrick.com
6  ORRICK, HERRINGTON & SUTCLIFFE LLP
   405 Howard Street
7  San Francisco, CA 94105-2669
   Telephone:     +1 415 773-5700
8  Facsimile:      +1 415 773-5759

9  Attorneys for Defendant
   Meta Platforms, Inc.

10

11                    UNITED STATES DISTRICT COURT

12                   NORTHERN DISTRICT OF CALIFORNIA

13                      SAN FRANCISCO DIVISION

14

15  GENEVIEVE MAHONEY,                    Case No. 22-cv-02873-AMO

16            Plaintiff,                  **DEFENDANT'S MOTION TO DISMISS
                                          PLAINTIFF'S AMENDED COMPLAINT;**
17       v.                               **ANTI-SLAPP MOTION TO STRIKE;
                                          MEMORANDUM OF POINTS AND**
18  FACEBOOK, INC.,                       **AUTHORITIES IN SUPPORT**

19            Defendant.                  Date:        June 27, 2024
                                          Time:        2:00 p.m.
20                                        Courtroom: 10
                                          Judge:       Hon. Araceli Martínez-Olguín
21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...................................................................................................2

II.  BACKGROUND ...................................................................................................3

III.  LEGAL STANDARD .............................................................................................6

IV.  ARGUMENT .......................................................................................................6

    A.  The SAC Fails To State A Claim For Defamation *Per Se*. ...........................6

        1.  Reference to Mahoney. ....................................................................7

        2.  Meta's Emergency News Statement Was Not Published To A Third Party Who Understood Its Allegedly Defamatory Meaning Or Applicability To Plaintiff. ............................................................10

        3.  Meta's Emergency News Statement Is Neither False Nor Is It Susceptible To A Defamatory Meaning. ....................................11

    B.  Section 230 Of the Communications Decency Act Bars Plaintiff's Claims...........13

        1.  Meta is an interactive computer service provider. ....................................14

        2.  The content was provided by another information content provider. ........14

        3.  Plaintiff's claims seek to treat Facebook as a "publisher." ........................15

    C.  Plaintiff's Complaint Should Be Struck Under The Anti-Slapp Statute................16

        1.  Meta's content is protected activity. ........................................................16

        2.  Plaintiff cannot show the probability of prevailing on claims.................17

        3.  Meta should be awarded fees. ................................................................18

    D.  Plaintiff Should Not Be Granted Leave To Amend................................................19

V.  CONCLUSION....................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albert v. Seal,*
2018 WL 1163852 (4th Dist. March 6, 2018) ........................................................................17

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)...................................................................................................................6

*Balzaga v. Fox News Network, LLC,*
173 Cal. App. 4th 1325 (2009) ...........................................................................................11, 12

*Bartholomew v. YouTube, LLC,*
17 Cal. App. 5th 1217 (2017) .....................................................................................................9

*Barnes v. Yahoo!, Inc.,*
570 F.3d 1096 (9th Cir. 2009) ........................................................................................13, 14, 15

*Blatty v. New York Times Co.,*
42 Cal. 3d 1033 (1986) ....................................................................................................... *passim*

*Browne v. McCain,*
611 F.Supp.2d 1062 (N.D. Cal. 2009) .......................................................................................17

*Calise v. Meta Platforms, Inc.,*
2022 WL 1240860 (N.D. Cal. April 27, 2022) .....................................................................14, 15

*Caraccioli v. Facebook, Inc.,*
167 F. Supp. 3d 1056 (N.D. Cal. 2016), *aff'd,* 700 F. App'x 588 (9th Cir.
2017). ..................................................................................................................................14, 15

*Cross v. Facebook, Inc.,*
14 Cal. App. 5th 190 (2017) ...........................................................................................13, 16

*Crowe v. County of San Diego,*
608 F.3d 406 (9th Cir. 2010) .......................................................................................................11

*Eastman v. Apple, Inc.,*
2019 WL 3934805 (N.D. Cal. Aug. 20, 2019) ...........................................................................7

*Ellis v. Starbucks Corp.,*
2015 WL 5240042 (N.D. Cal. Sept. 5, 2015) .............................................................................6

*Fitbit, Inc. v. Laguna 2, LLC,*
2018 WL 306724 (N.D. Cal. Jan. 5, 2018) ...............................................................................10

*Flores v. Emerich & Fike,*
2006 WL 2536615 (E.D. Cal. Aug. 31, 2006).............................................................................19

*Greater Los Angeles Age. on Deafness v. Cable News,*
742 F.3d 414 (9th Cir. 2014) ......................................................................................................16

*Hayes v. Facebook, Inc.*,
  2019 WL 5088805 (N.D. Cal. Aug. 15, 2019) ....................................................................8

*Hunter v. CBS Broad., Inc.*,
  221 Cal. App. 4th 1510 (2013) ......................................................................................16

*Igbonwa v. Facebook, Inc.*,
  2018 WL 4907632 (N.D. Cal. Oct. 9, 2018)....................................................................14

*Jackson v. Mayweather*,
  10 Cal. App. 5th 1240 (2017) ........................................................................................17

*King v. Facebook, Inc.*,
  572 F.Supp.3d 776 (2021) ..............................................................................................19

*Lee v. City of Los Angeles*,
  250 F.3d 668 (9th Cir. 2001) ............................................................................................6

*Lewis v. Google LLC*,
  461 F. Supp. 3d 938 (N.D. Cal. 2020) ............................................................................15

*Lloyd v. Facebook, Inc.*,
  2022 WL 4913347 (N.D. Cal. Oct. 3, 2022)....................................................................14

*Lopez v. Smith*,
  203 F.3d 1122 (9th Cir. 2000) ........................................................................................19

*Makaeff v. Trump Univ. LLC*,
  715 F.3d 254 (9th Cir. 2013) ..........................................................................................17

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
  521 F.3d 1097 (9th Cir. 2008) ..........................................................................................6

*Morton v. Twitter, Inc.*,
  2021 WL 1181753 (C.D. Cal. Feb. 19, 2021)..................................................................15

*Perfect 10, Inc. v. CCBill LLC*,
  481 F.3d 751 (9th Cir. 2007), *opinion amended and superseded on denial of
  reh'g*, 488 F.3d 1102 (9th Cir. 2007)..............................................................................13

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
  890 F.3d 828 (9th Cir. 2018) ..........................................................................................17

*Ringler Assocs. Inc.*,
  80 Cal. App. 4th (2000) ..................................................................................................10

*Royal Holdings Techs. Corp. v. IP Video Market Info Inc.*,
  2020 WL 8225666 (C.D. Cal. Dec. 18, 2020) ................................................................17

*Sarver v. Chartier*,
  813 F.3d 891 (9th Cir. 2016) ..........................................................................................16

*SDV/ACCI, Inc. v. AT & T Corp.*,
  522 F.3d 955 (9th Cir. 2008) ............................................................................................8

iv

*Sidense Corp. v. Kilopass Tech Inc.*,
    2012 WL 3545289 (N.D. Cal. Aug. 16, 2012) ..........................................................................13

*Sieler v. Atieva Inc.*,
    2022 WL 18402494 (N.D. Cal. Dec. 16, 2022) ......................................................................10

*Sikhs for Justice, Inc. v. Facebook, Inc.*,
    144 F. Supp. 3d 1088 (N.D. Cal. 2015), *aff'd*, 697 Fed. Appx. 526........................................14

*Smith v. Santa Rosa Press Democrat*,
    No. 11-CV-2411, 2011 WL 5006463 (N.D. Cal. Oct. 20, 2011) ............................................19

*Todd v. Lovecruft*,
    2020 WL 60199 (N.D. Cal. Jan. 6, 2020) .............................................................................17

**Statutes**

Cal. Civ. Proc. Code § 425.16 ...............................................................................................13

Communications Decency Act, 47 U.S.C. § 230(c)(1)........................................................ *passim*

Fed. Rule Civ. Proc. Rule 12(b)(6) ...................................................................................4, 5, 15

DEFENDANT'S MOTION TO DISMISS; ANTI-SLAPP MOTION TO STRIKE
Case No. 22-cv-02873-AMO

### NOTICE OF MOTION AND RELIEF SOUGHT

**PLEASE TAKE NOTICE** that on June 27, 2024 at 2:00 p.m., or as soon thereafter as may be heard by the Honorable Judge Araceli Martínez-Olguín , United States District Court, San Francisco Division, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Meta Platforms, Inc. will and hereby does move to dismiss Plaintiff's Second Amended Complaint on the grounds that Plaintiff fails to state a claim upon which relief can be granted and Plaintiff's claims are barred by Section 230(c)(1) of the Communications Decency Act, 47 U.S.C. § 230(c)(1).

**PLEASE TAKE FURTHER NOTICE** that at the same date, time, and place, Defendant Meta Platforms, Inc. also will and hereby does move to strike Plaintiff's Second Amended Complaint.  Meta seeks an order pursuant to California Code of Civil Procedures § 425.16 striking all of Plaintiff's claims in their entirety.

These motions are based upon this notice of motion and motion, the memorandum of points and authorities in support that follows, the proposed order filed concurrently herewith, all pleadings and papers on file in this action, the arguments of counsel, and upon such further oral and written argument and evidence as may be presented at or prior to the hearing on this motion.

Dated:  March 7, 2024

ORRICK, HERRINGTON & SUTCLIFFE LLP

By:   _/s/ Jacob M. Heath_
JACOB M. HEATH

Attorney for Defendant
META PLATFORMS, INC.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

On March 2, 2023 Plaintiff Genevieve Mahoney ("Plaintiff") filed her First Amended Complaint ("FAC") against Meta Platforms, Inc. ("Meta"), asserting a single cause of action for defamation.  Plaintiff claimed Meta's January 6, 2021 "Emergency News Statement," published on Facebook in light of the extraordinary events of January 6, 2021 at the U.S. Capitol ("January 6 events"), somehow defamed her.  The statement addressed steps Meta was taking to identify and remove content on the service that, *inter alia*, risked inciting or encouraging further violence. Plaintiff, who was present in Washington D.C. near the Capitol on January 6, claims the Emergency News Statement—which ***did not name her or anyone else***—implicitly accused her of engaging in criminal activity at the Capitol.  Plaintiff alleged that a Furman University Instagram account called @fur.meme "recognized" that the statement applied to her—even though ***none of the @fur.meme Instagram posts even reference Meta's statement that was posted on Facebook***.

On January 6, 2024, the Court granted Meta's motion to dismiss Plaintiff's FAC, concluding that Plaintiff failed to plead facts necessary to establish *any* of the three elements of defamation.  *See Mahoney v. Meta Platforms, Inc.*, 2024 WL 68550 (N.D. Cal. Jan. 6, 2024), Dkt. No. 129 ("Order").  The Court gave Plaintiff an opportunity to cure the numerous deficiencies in her FAC.  Having now filed her Second Amended Complaint ("SAC"), it is clear Plaintiff has no reasonable basis to pursue this litigation.  Just as before, Plaintiff alleges that Meta purportedly defamed her in its January 6, 2021 Emergency News Statement.  As in her FAC, Plaintiff's SAC relies on the ***same*** posts on the @fur.meme Instagram account to argue that third-parties understood Meta's Emergency News Statement to actually refer to her.  In fact, Plaintiff makes no meaningful effort to address any of the deficiencies the Court identified and, instead, merely reiterates nearly all the deficient allegations from her FAC.  And while Plaintiff adds a handful of new conclusory statements, none of them provides a factual basis for defamation.  As established herein, Plaintiff's SAC should be dismissed *with prejudice*.

*First*, Plaintiff's defamation claim still fails for three independent reasons, each of which was identified by the Court in its Order: (1) "Mahoney fails to establish that Meta's Emergency

News Statement specifically referred to her or was understood by any third party as referring to her" (Order at 7); (2) "Mahoney does not allege that a single person [i] saw the Emergency News Statement, much less understood its allegedly defamatory meaning towards her, or who [ii] legitimately read that allegedly defamatory meaning as applying to her" (*id.* at 8); (3) "no reasonable reader could have reasonably understood the Emergency News Statement in the alleged defamatory sense" because it was expressly directed at violent, not peaceful protestors (*id.* at 9).

*Second*, Plaintiff's claim fails because it is barred by Section 230 of the Communications Decency Act ("Section 230"), which protects interactive service providers like Meta from claims that treat the service providers as publisher of third-party content.  Despite attempts to evade Section 230, Plaintiff's claim—at bottom—is that she was harmed by information published by the third-party @fur.meme account, not by Meta's Emergency News Statement. The Amended Complaint thus satisfies all the requirements for Section 230(c)(1) protection.[1]

*Third*, Plaintiff's claims should be struck under California's anti-SLAPP statute, which permits early dismissal of lawsuits aimed at acts in furtherance of the right to speech.  The Court previously deferred consideration of Meta's anti-SLAPP Meta's decision pending the filing of Plaintiff's SAC (Order at 10).  However, Plaintiff's lawsuit attacks Meta's public Emergency News Statement, which was a quintessential act in the furtherance of the right to speak, made in connection with an issue of public interest.  The Court should not only now dismiss on this basis as well, but also award Meta its reasonable attorney's fees under the anti-SLAPP statute.

## II.    BACKGROUND

Plaintiff purports to be a college student at Furman University in South Carolina, and a "frequent user of Instagram."  SAC ¶¶ 45-46.  On January 6, 2021, Plaintiff attended the January 6 events—what she describes as a "Rally" to protest the results of the 2020 United States presidential election.  *Id.* ¶¶ 33, 59.  On that same day, "some protestors other than Genevieve," "commit[ted] crimes by breaching the Capitol and engaging in criminal activity.'"  SAC ¶ 71.

Plaintiff alleges that at approximately 2:00 pm on January 6, 2021, she posted a picture to

---

[1] The Court did not address Meta's Section 230 argument in its Order.

her Instagram account of the protest at the Capitol building.  *Id.* ¶ 62.  The picture included the caption "Our Capitol." *Id.*  Plaintiff further alleges that, at about 7:00 pm, Meta published the Emergency News Statement "to the public and groups and communities" on Facebook related to the events at the Capitol.  *Id.* ¶ 86.  She claims that the Emergency News Statement was written by "authorized Facebook representatives Guy Rosen, Vice President of Integrity, and Monika Bickert, Vice President of Global Policy Management." *Id.* ¶ 84.  The SAC excerpts the Emergency News Statement:

> …We are appalled by the ***violence at the Capitol today.***   We are treating ***these events as an emergency***…For those of you who are wondering, here are the actions we're taking: First, we have been ***searching for and removing the following content:***
>
> - Praise and support of the ***storming of the Capitol.***
>
> - ***Calls to bring weapons*** to locations across the US—not just in Washington but anywhere in the US—including protests.
>
> - ***Incitement or encouragement of the events at the Capitol,*** including videos and photos from the protestors.  At this point they represent ***promotion of criminal activity*** which violates our policies.
>
> - Calls for protests—even peaceful ones—if they ***violate curfew*** in DC.
>
> - Attempts to ***restage violence*** tomorrow or in the coming days.

*Id.* (emphases added).  Plaintiff alleges that the third bullet of Meta's Emergency News Statement purportedly connected her to those who committed crimes at the Capitol by implying that all January 6 protestors were engaging in criminal conduct.  *Id.* ¶¶ 94, 101-103.  Plaintiff does not allege that the Emergency News Statement explicitly referred to her.  Rather, the SAC alleges that Facebook "blocked internet access to" Plaintiff's photo by "disabling and deleting her Instagram account" almost a full week after the January 6 protests.  *Id.* ¶ 90.

 One of the "groups" that purportedly received the Emergency News Statement was an Instagram account called @fur.meme in which Plaintiff alleges she was a member.  *Id.* ¶ 94.

According to the SAC, an anonymous student from Furman University operates the @fur.meme account, and the account is "well-followed" by students, faculty, school officials, and alumni. *Id.* ¶ 54. Plaintiff alleges that "@fur.meme made [a] series of posts on the Internet through Instagram evidencing it was understood within the Furman community and @fur.meme group that the Emergency News Statement actually referred to Genevieve," purportedly because it "***repeated*** the Emergency News Statement's talking points." *Id.* ¶ 106 (emphasis added). While Plaintiff claims the posts "repeated" the Statement's "talking points," none of the eleven screenshots of @fur.meme's Instagram posts use the same language as the Emergency News Statement, nor do they mention or reference the Emergency New Statement. *Id.* In fact, Plaintiff does not plausibly allege that the Emergency News Statement was published on *Instagram* itself. Rather, the SAC points to a hyperlink of the Emergency News Statement on *Facebook's* website available to the general public. *See Id.* ¶ 85. Further, one of the @fur.meme posts expressly states that @fur.meme knew about Plaintiff's attendance at the January 6 protest because of pictures she had shared on her "public Instagram account." *Id.* ¶ 102. Not a single post included in the SAC references the Emergency News Statement, Facebook, Mr. Rosen, or Ms. Bickert. Plaintiff claims that @fur.meme's posts about her "severely damage[d]" her "reputation within the Furman community." *Id.* ¶ 114.

On March 31, 2023, Meta moved to dismiss Plaintiff's FAC, on the same grounds asserted herein. On November 2, 2023, the Court heard Meta's motion. On January 6, 2024, the Court granted Meta's motion without prejudice. *First*, the Court held that Mahoney's defamation claim failed because the Emergency News Statement "refers to a group so large that it cannot be construed as 'of or concerning' her in any way," and she fails to draw any connection between Meta's Statement on Facebook and "@fur.meme's statements on Instagram, much less that @fur.meme and other members of the Furman University community understood Meta's statement to refer to her at all." Order at 7. *Second*, the Court held that Mahoney "does not allege that a single person (1) saw the Emergency News Statement, much less understood its allegedly defamatory meaning towards her, or who (2) legitimately read that allegedly defamatory meaning as applying to her." Order at 8. *Third*, the Court held that "Mahoney fails to allege that

any person would have reasonably "understood the statement in the alleged defamatory sense" – *i.e.*, that everybody who posted photos from the protest was a criminal." Order at 9.   The Court did not reach Meta's argument regarding the application of Section 230 and deferred "consideration of Meta's anti-SLAPP motion pending the filing of an amended pleading."  Order at 10.

## III.   LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  Dismissal is appropriate "where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  In conducting a Rule 12(b)(6) analysis, the court may consider the complaint, material relied upon in the complaint, and material subject to judicial notice. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001).  The court must accept "well-pleaded factual allegations" as true, but need not "accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 664, 678.

## IV.   ARGUMENT

### A.   The SAC Fails To State A Claim For Defamation *Per Se.*

Plaintiff still brings a lone claim for defamation *per se*.  To prevail on a claim for defamation *per se*, a plaintiff must prove that "a defendant published a false statement to another person or persons, that those persons reasonably understood the statements to be about the plaintiff, that the statements were defamatory on their face [], and that the defendant failed to use reasonable care to determine the truth or falsity of the statement." *Ellis v. Starbucks Corp.*, 2015 WL 5240042, at *4 (N.D. Cal. Sept. 5, 2015).  In addition, the First Amendment "requires that the statement on which the claim is based must specifically refer to, or be 'of and concerning,' the plaintiff in some way." *Blatty v. New York Times Co.*, 42 Cal. 3d 1033, 1042 (1986).  Plaintiff's defamation claim must be dismissed with prejudice for the same three independent reasons as the Court already acknowledged in dismissing her FAC: (1) Meta's Emergency News Statement did not refer to Plaintiff, (2) Meta's Emergency News Statement was not published to a third party

who reasonably understood its allegedly defamatory meaning or applicability to Plaintiff, and (3) Meta's Emergency News Statement was not false or reasonably susceptible to a defamatory meaning.

### 1.   Reference to Mahoney.

As the Court explained (Order at 6), to state a defamation claim, the statement on "which the claim is based must specifically refer to, or be 'of and concerning,' the plaintiff in some way." *Blatty v. N.Y. Times Co.*, 42 Cal.3d 1033, 1042 (1986).  "In order to satisfy this requirement, the plaintiff must effectively plead that the statement at issue either expressly mentions [her] or refers to [her] by reasonable implication."  *Id.* at 1046 (citations omitted).  Under reference by reasonable implication, "a defamatory statement that is ambiguous as to its target not only must be capable of being understood to refer to the plaintiff, but also must be shown actually to have been so understood by a third party." Order at 6 (quoting *SDV/ACCI, Inc. v. AT&T Corp.*, 522 F.3d 955, 959 (9th Cir. 2008).

Plaintiff still contends that the following portion of the Emergency News Statement was "of and concerning" her: "Incitement or encouragement of the events at the Capitol, including videos and photos from the protestors.  At this point they represent promotion of criminal activity which violates our policies."  SAC ¶¶ 114, 164. While Plaintiff also concedes that the Emergency News Statement **does not identify her by name** (SAC ¶ 165), she argues that it refers to her by "reasonable implication" because it was "understood within Instagram's @fur.meme group and the Furman community" to refer to her.  *Id.* ¶ 168.  This argument—which Plaintiff already made in her FAC, and which the Court already rejected—fails.

"[F]or a claim based on an 'alleged injurious falsehood of a statement,' such as libel, 'the plaintiff must effectively plead that the statement at issue either expressly mentions him or refers to him by reasonable implication.'" *Eastman v. Apple, Inc.*, 2019 WL 3934805, at *7 (N.D. Cal. Aug. 20, 2019) (plaintiff failed to adequately allege facts from which the Court could infer that

statement referred to him by reasonable omission).[2]   The requirement that the statement be "of and concerning" the plaintiff "limits the right of action for injurious falsehood, granting it to those who are the direct object of criticism and denying it to those who merely complain of nonspecific statements that they believe cause them some hurt." *Blatty*, 42 Cal. 3d at 1044 (noting the "of and concerning" requirement serves to "immunize a kind of statement which, though it can cause hurt to an individual, but is deemed too important to the vigor and openness of public discourse in a free society to be discouraged.").   Moreover, where the allegedly defamatory statement concerns a group, "the plaintiff faces a difficult and sometimes insurmountable task…where the group is large—in general, any group numbering over twenty-five members—the courts in California and other states have consistently held that plaintiffs cannot show that the statements were of and concerning them." *Blatty*, 42 Cal. 3d at 1046 (collecting cases).

Plaintiff once again fails to plead facts from which the Court can infer that the Emergency News Statement is "of and concerning" her.   Rather, Plaintiff concedes that the Emergency News Statement *does not refer to Plaintiff expressly whatsoever*, *see* FAC ¶ 86, and the Emergency News Statement cannot be reasonably understood to refer to her by implication.   *Id.* ¶ 158; *see, e.g.*, *Hayes v. Facebook, Inc.*, 2019 WL 5088805, at *7 (N.D. Cal. Aug. 15, 2019) (dismissing defamation claim where warning notice on plaintiff's Facebook page could not reasonably be interpreted as being about plaintiff personally).

Plaintiff argues that the Emergency News Statement "referred to [her] by reasonable implication" because she was one of two members on the @fur.meme Instagram "group" who were "protestors near the Capitol Breach…posting photos on the Internet."   SAC ¶ 160.   Her argument is misguided, as the Court already held. Order at 7.   Nothing in the Emergency News Statement referred to Ms. Mahoney or @fur.meme at all.   SAC ¶ 86.   Instead, the challenged portion of the Emergency News Statement referred to "videos and photos from the protestors"—

---

[2] As explained further below (*see* Section IV.A.2 *infra*), "a defamatory statement that is ambiguous as to its target not only must be capable of being understood to refer to the plaintiff, but also must be shown actually to have been so understood by a third party." *SDV/ACCI, Inc. v. AT & T Corp.*, 522 F.3d 955, 960 (9th Cir. 2008).   Here, Plaintiff has failed to sufficiently allege that any person understood the Emergency News Statement to refer to her.

"a group so large that the 'of and concerning' requirement could not plausibly be met under California law." Order at 7.  Indeed, Ms. Mahoney once again describes in her pleading that "***thousands of people*** across the country traveled to the Ellipse in D.C. on January 6, 2021, to have their voices heard and to peacefully and lawfully protest the Election and Certification Count."  SAC ¶ 37 (emphasis added); Order at 7.  As it did before, "Mahoney's claim fails because the Emergency News Statement refers to a group so large that it cannot be construed as "of or concerning" her in any way.  Order at 7 (citing *Blatty*, 42 Cal.3d 1033, 1042); *see, e.g.*, *Bartholomew v. YouTube, LLC,* 17 Cal. App. 5th 1217 (2017) (dismissing defamation claims where plaintiff provided no theory as to how the generalized statements on YouTube's Community Guidelines page were ascribed in any particular way to *her*.).

Plaintiff's meager attempts to "draw any connection between Meta's statement on Facebook and @fur.meme's statements on Instagram," as well as her attempts to show that "@fur.meme and other members of the Furman University community understood Meta's statement to refer to her at all" fail.  Order at 7.  Plaintiff claims that the @fur.meme posts "repeat[] the Emergency News Statement talking points," which purportedly demonstrates that the Emergency News Statement encouraged "those like @fur.meme to lump Genevieve in with the rioters."  SAC ¶ 106.  But Plaintiff fails to draw any connection between the language in the Emergency News Statement and the @fur.meme post, other than that both discuss the events of January 6—an "infamous date in American History," which Plaintiff alleges President Joe Biden called "the worst attack on our democracy since the Civil War."  SAC ¶ 113.  Notably, the Emergency News Statement does not reference anyone by name, nor does it say anything about "racism, sexism, homophobia, xenophobia, ableism," as the @fur.meme posts do.  SAC ¶ 106.  Rather, the Emergency News Statement is focused on actions Facebook planned to take as "emergency measures" after the events of January 6.  SAC ¶ 86.

Accordingly, Mahoney still fails to establish that "Meta's Emergency News Statement specifically referred to her or was understood by any third party as referring to her," and her defamation claim should be dismissed on this basis alone.  Order at 7.

2.    **Meta's Emergency News Statement Was Not Published To A Third Party Who Understood Its Allegedly Defamatory Meaning Or Applicability To Plaintiff.**

To state a claim for defamation, Plaintiff is also required to plead "publication," which California courts define as a "communication to some third person who understands both the defamatory meaning of the statement and its application to the person to whom reference is made." *Ringler Assocs. Inc.*, 80 Cal. App. 4th at 1179 (2000); Order at 7.  Plaintiff contends that Meta published the Emergency News Statement on Facebook "to the general public, including on the Internet and to Instagram groups and communities such as the @fur.meme group."[3] SAC ¶ 8.

Plaintiff still complains that the @fur.meme account published a series of posts on Instagram that showed the Emergency News Statement actually referred to her by reasonable implication, SAC ¶ 100, but the @fur.meme posts included "in the [SAC] show nothing of the sort."  Order at 8.  Indeed, as the Court already held, Mahoney still fails to draw any nexus between (1) the Emergency News Statement and (2) the @fur.meme Instagram posts that identified her as having attended events at the Capitol on January 6, 2021.  Order at 8.  Indeed, Ms. Mahoney still does not identify *a single person* who actually (1) saw the Emergency News Statement, much less understood its allegedly defamatory meaning towards Plaintiff and (2) legitimately read that allegedly defamatory meaning as applying to her.

The SAC thus still falls well short of alleging that @fur.meme and others on Instagram "seized" upon the Emergency News Statement.  Order at 8.  Critically, none of the eleven screenshots says *a single word* about the Emergency News Statement, and "the posts themselves show the opposite" (Order at 8)—there is simply no plausible allegation that the Furman student who operates the @fur.meme Instagram account "recognized"—let alone even saw—the Emergency News Statement, which, beyond being published to the "Internet" and general public, was published on *Facebook*.  SAC ¶¶ 15, 98; *see, e.g.*, *Sieler v. Atieva Inc.*, 2022 WL 18402494, at *5 (N.D. Cal. Dec. 16, 2022) (finding conclusory allegations that "[p]rofessionals in the

---

[3] While Plaintiff now claims that the Emergency News Statement was published to "Instagram groups and communities such as the @fur.meme group," Plaintiff still merely cites a hyperlink to it on the Facebook website that was published on January 6, 2021 and made available to the general public.  SAC ¶¶ 81.  Plaintiff does not provide any facts establishing that the statement was posted on Instagram.

automotive lighting community would and have interpreted" the defamatory statement as referring to Plaintiff insufficient); *Fitbit, Inc. v. Laguna 2, LLC*, 2018 WL 306724, at *8 (N.D. Cal. Jan. 5, 2018) ("It is hard to see how a party unidentified and unknown to the audience of the alleged defamation can claim it was defamed and injured.").[4]

Plaintiff has thus not established that "the person(s) behind @fur.meme saw Meta's statement at all."  Order at 8.  Plaintiff's conjecture otherwise should be rejected.  Indeed, the fact that "@fur.meme's language infers a collective responsibility to hold 'accountable' 'violent' individuals" SAC ¶ 107, and that Meta disabled Genevieve's account, simply does not support that a single person at her college actually saw the Emergency News Statement, much less understood its allegedly defamatory meaning towards her.  Order at 8.

### 3. Meta's Emergency News Statement Is Neither False Nor Is It Susceptible To A Defamatory Meaning.

Plaintiff asserts that the Emergency News Statement is "provably false" because Plaintiff "has never been charged with a crime related to her 'Our Capitol photo.'"  SAC ¶ 174.  This argument erroneously assumes that the statement is plausibly "of and concerning" Plaintiff, which it is not, *see* Section IV.A.1, *supra*.  Read as a whole, the Emergency News Statement is neither false nor susceptible to defamatory meaning.  Indeed, to state a claim for defamation, "defamatory meaning must be found, if at all, in a reading of the publication as a whole…Defamation actions cannot be based on snippets taken out of context."  *Crowe v. County of San Diego*, 608 F.3d 406, 443 (9th Cir. 2010).  "The defamatory character of language is measured 'according to the sense and meaning . . . which such language may fairly be presumed to have conveyed to those to whom it was published.'"  *Balzaga v. Fox News Network, LLC*, 173 Cal. App. 4th 1325, 1337 (2009) (affirming ruling that no reasonable viewer of news program could have understood it to have defamatory meaning).  If no "reasonable viewer could have reasonably understood the statement in the alleged defamatory sense, the matter may be decided as a question of law."  *Id.*

---

[4] Indeed, Plaintiff's allegation that @fur.meme recognized Meta's Emergency News Statement is wholly contradicted by the initial @fur.meme post, which indicates that the Furman student learned of Plaintiff's attendance at the January 6 protest directly from Ms. Mahoney's own activity on Instagram.  SAC ¶ 110 ("@genmahoney19 [has] attended this violent, pro-Trump event. This information is known by pictures [she has] shared on [her] public Instagram account[].").

Plaintiff still contends that the "Emergency News Statement is not only false, but libel per se because it essentially accuses her of a crime." Order at 9. Particularly, Mahoney claims that the Emergency News Statement was "false and untrue" because her photo did not "represent promotion of criminal activity," but the statement noted that Meta was searching for and removing content that represents "promotion of criminal activity." SAC ¶ 173. She thus alleges that the Emergency News Statement is defamatory because, in her view, it sweeps in not only criminal conduct at the Capitol but also peaceful protestors like herself. *See* SAC ¶¶ 164-65.

Here, as in her FAC, Plaintiff "fails to allege that any person would have reasonably 'understood the statement in the alleged defamatory sense'–*i.e.*, that everybody who posted photos from the protest was a criminal." Order at 9; *Balzaga*, 173 Cal. App. 4th at 1337 (affirming ruling that no reasonable viewer of news program could have understood it to have defamatory meaning). As the Court noted, "Meta's statement does not accuse Mahoney of a crime because it does not refer to her at all." Order at 9. Plaintiff has done nothing in her SAC to fix this failure. Indeed, no reasonable person would construe Meta's statement to have a defamatory meaning as to Plaintiff's purported peaceful protesting. Rather, the language of Meta's Emergency News Statement, read as a whole, shows that the Statement was directed exclusively at *content* posted on Meta's services that could have the effect of *promoting violence*.

For example, the introductory paragraph states that "[w]e are appalled by the **violence** in the Capitol today. We are treating these **events** as an emergency." *Id.* ¶ 86 (emphasis added). Meta's Statement thereby defined "events" in terms of "violence at the Capitol." *Id.* The clear implication is that the phrase "events at the Capitol" in the allegedly defamatory statement referred only to violence, and the "videos and photos from the protestors" that were the focus of the statement were those that could "incite or encourage" violence at the Capitol. *See id.* This conclusion is reinforced by the phrase "including videos and photos from the protestors," whereby Meta identified videos and photos from the protestors as one category of content that could violate Facebook's policies against inciting violence. *See id.* And the Emergency News Statement was directed not at "all the protestors posting photographs" as Plaintiff alleges, *id.* ¶ 144, but rather only at the content that risked inciting or encouraging violence.

Additionally, all of the other bullet points in the Emergency News Statement made clear that it was concerned about posts encouraging violent or criminal conduct: "[p]raise and support of the  storming of the Capitol"; "[c]alls to bring weapons to locations across the US . . . including protests"; [c]alls for protests . . . if they violate curfew in DC"; and "[a]ttempts to restage violence tomorrow or in the coming days." *Id.* ¶ 86.  Reading Meta's Emergency News Statement as a whole makes clear that it was directed at content that could incite violence. *See, e.g.*, *Sidense Corp. v. Kilopass Tech Inc.*, 2012 WL 3545289, at *5 (N.D. Cal. Aug. 16, 2012) (finding statement not defamatory when read in context).  Plaintiff's allegation that one of these bullet points was somehow directed at posts by peaceful protestors is not a reasonable construction based on the totality of the circumstances.  *Balzaga*, 173 Cal. App. 4th at 1337 (applying totality of circumstances test to review allegedly defamatory language).

### B.    Section 230 Of the Communications Decency Act Bars Plaintiff's Claims

Even if Plaintiff had pled facts sufficient to state a claim against Meta—which she has not—her claim still fails for the independent reason that it is barred as a matter of law under Section 230(c)(1) of the Communications Decency Act, 47 U.S.C. § 230 *et seq*.  Meta does not contend that Section 230 immunizes it from liability for its own statements.  However, Plaintiff's claim is that she was harmed by information published by the @fur.meme account, not directly by the Emergency News Statement (which plainly cannot be read to apply to her, *see* Section V.A.1, *supra*).  The elements of Section 230(c) are satisfied here, and her claims must be dismissed.

Section 230 "protects certain internet-based actors from certain kinds of lawsuits." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1099 (9th Cir. 2009).  Section 230 "establish[es] broad federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service."  *Perfect 10, Inc. v. CCBill LLC*, 481 F.3d 751, 767 (9th Cir. 2007), *opinion amended and superseded on denial of reh'g*, 488 F.3d 1102 (9th Cir. 2007).  Section 230 is to be "construed broadly, 'to protect websites not merely from ultimate liability, but from having to fight costly and protracted legal battles.'" *Cross v. Facebook, Inc.*, 14 Cal. App. 5th 190, 206 (2017).  Crucially, Section 230 bars claims based on a service provider's

decisions about "reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content." *Barnes*, 570 F.3d at 1099.  Under Section 230(c)(1), a claim should be dismissed if (1) the defendant is a "provider . . . of an interactive computer service[;]" (2) the allegedly offending content was "provided by another information content provider[;]" and (3) Plaintiffs' claims treat the defendant as the "publisher" of that content. 47 U.S.C. § 230(c)(1).  Plaintiff's claims meet all three of these elements.

### 1. Meta is an interactive computer service provider.

Section 230 defines an interactive computer service provider as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server."  47 U.S.C. § 230(f)(2).  California and federal courts have uniformly held that Meta meets Section 230's "interactive computer service provider" definition.  *See e.g., Sikhs for Justice, Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088 (N.D. Cal. 2015), *aff'd*, 697 Fed. Appx. 526 ("it is undisputed that Facebook is an interactive computer service provider"); *Caraccioli v. Facebook, Inc.*, 700 F. App'x 588 (9th Cir. 2017) (affirming dismissal of claims based on Section 230 and finding that Facebook is an interactive computer service provider); *Lloyd v. Facebook, Inc.*, 2022 WL 4913347, at *8 (N.D. Cal. Oct. 3, 2022) ("Meta and/or Facebook is an interactive computer service provider"); *Calise v. Meta Platforms, Inc.*, 2022 WL 1240860, at *2 (N.D. Cal. April 27, 2022) (same).  Accordingly, Section 230(c)(1)'s first requirement is met.

### 2. The content was provided by another information content provider.

The information for which Plaintiff seeks to hold Defendants liable must come from an "information content provider" that is not Meta.  47 U.S.C. § 230(c)(1).  Here, it is clear from the SAC that Plaintiff seeks to hold Meta liable for information published by @fur.meme.  Despite her attempts at artful pleading, she concedes that it was *@fur.meme's posts* that "severely damaged" her reputation "within the Furman community."  SAC ¶ 114.  And as discussed above, Plaintiff fails to make any plausible factual allegations that Meta contributed "in whole or in part" to the creation or development of @fur.meme's posts.  *See Fair Hous. Council*, 521 F.3d at 1162.  Accordingly, Section 230(c)(1)'s second requirement is met.  *See, e.g., Lloyd*, 2022 WL 4913347, at *8; *Igbonwa v. Facebook, Inc.*, 2018 WL 4907632, at *6 (N.D. Cal. Oct. 9, 2018)

1    (finding content was created by "another content provider" where Plaintiff alleged that Facebook

2    users made the offensive post).

3              **3.      Plaintiff's claims seek to treat Facebook as a "publisher."**

4              Under Section 230, a plaintiff's claim treats a defendant as a "publisher" when it seeks to

5    hold a service provider liable for its purported exercise of "editorial functions"—such as

6    "deciding whether to publish, withdraw, postpone or alter content." *Barnes*, 570 F.3d 1096,

7    1101–1102; *Lewis v. Google LLC*, 461 F. Supp. 3d 938, 954 (N.D. Cal. 2020) (holding plaintiff's

8    claims that the defendants "wrongfully … restrict[ed] and remov[ed] his videos" constituted

9    publishing functions under Section 230).  Plaintiff's claim falls squarely within the third Section

10   230(c) element because it seeks to hold Meta liable as the publisher or speaker of @fur.meme's

11   posts.  For this element, "[w]hat matters here is not the "name of the cause of action," but

12   "whether the duty that the plaintiff alleges the defendant violated derives from the defendant's

13   status or conduct as a 'publisher or speaker.'  If it does, Section 230(c)(1) precludes liability."

14   *Barnes,* 570 F.3d at 1101–02.

15             Here, Plaintiff's claim for defamation necessarily treats Meta as the publisher or speaker

16   of @fur.meme's content on Instagram by asserting that it was @fur.meme's posts on Instagram

17   that caused the asserted harm to Plaintiff.  *See* SAC ¶ 106 ("@fur.meme made the following

18   series of posts on Instagram…and it has severely damaged Genevieve's reputation within the

19   Furman community").  Despite Plaintiff's blatant attempts to avoid Section 230, at its core,

20   Plaintiff's claim seeks to hold Meta liable for allowing allegedly defamatory content—created

21   and posted by @fur.meme—on Instagram.  *See, e.g.*, *Caraccioli*, 167 F. Supp. 3d at 1066

22   (dismissing claims premised on Facebook's alleged failure to remove content); *Calise*, 2022 WL

23   1240860, at *4 (dismissing breach of contract claim for allowing purportedly fraudulent ads on

24   Facebook); *Morton v. Twitter, Inc.*, 2021 WL 1181753, at *4 (C.D. Cal. Feb. 19, 2021)

25   (dismissing claims where they sought to treat Twitter as publisher of objectionable content by a

26   third-party).

27             In short, Section 230 precludes Plaintiff from bringing a claim against Meta for content

28   published by the @fur.meme account.  Plaintiff's claims must be dismissed with prejudice.

1

### C.      Plaintiff's Complaint Should Be Struck Under The Anti-Slapp Statute.

2      Meta also moves to strike Plaintiff's claims under California's anti-SLAPP statute, Cal.

3   Civ. Proc. Code § 425.16(b).  To succeed on an anti-SLAPP motion, the defendant must show the

4   challenged claim is one "arising from" protected activity by demonstrating that the conduct

5   underlying the claim fits within one of Section 425.16's categories of protections, including "any

6   written or oral statement or writing made in a place open to the public or a public forum in

7   connection with an issue of public interest."  CCP § 425.16(b)(1).  In assessing whether a claim

8   arises from protected activity, the court disregards labeling and instead examines "the principal

9   thrust or gravamen of a plaintiff's cause of action … by identifying the allegedly wrongful and

10  injury-producing conduct … that provides the foundation for the claim."  *Hunter v. CBS Broad.,*

11  *Inc.*, 221 Cal. App. 4th 1510, 1520 (2013).  Thus, under the statute, a plaintiff's state law claims

12  are struck if (1) the defendant makes a *prima facie* showing that the claims arise from "protected

13  activity" and (2) the plaintiff fails to demonstrate that her claims are legally sufficient.  *See, e.g.*,

14  *Sarver v. Chartier*, 813 F.3d 891, 901 (9th Cir. 2016).  Both conditions are present here.

15

### 1.      Meta's content is protected activity.

16     The anti-SLAPP statute protects, among other things, any conduct "in furtherance of

17  [Meta's] right of free speech, including "any written or oral statement or writing made in a place

18  open to the public or a public forum in connection with an issue of public interest."  Cal. Civ.

19  Proc. § 425.16(e).  "[W]here ... an action directly targets the way a content provider chooses to

20  deliver, present, or publish news content on matters of public interest, that action…must

21  withstand scrutiny under California's anti-SLAPP statute."  *Greater Los Angeles Age. on*

22  *Deafness v. Cable News*, 742 F.3d 414, 424–425 (9th Cir. 2014).  Here, Plaintiff's SAC targets

23  Meta's decision to deliver the Emergency News Statement regarding the January 6 events.  The

24  anti-SLAPP statute protects Meta's alleged conduct because (1) Meta's decision to post a timely

25  statement on Facebook to its extensive community of users is an act that furthers the right to

26  speak and (2) Meta's decisions relate to the events of January 6, 2021 at the U.S. Capitol, which

27  is manifestly an issue of public interest.

28     *First*, Meta's post on its own service satisfies the first prong because "websites [that] are

16

accessible to the public," including Facebook, are considered "open to the public" for the purposes of the anti-SLAPP statute. *Jackson v. Mayweather*, 10 Cal. App. 5th 1240, 1252 (2017) (statements made on Facebook satisfy the first prong of anti-SLAPP statute); *Cross*, 14 Cal. App. 5th at 197 (affirming Facebook meets anti-SLAPP definition); *see also Todd v. Lovecruft*, 2020 WL 60199, at *13 (N.D. Cal. Jan. 6, 2020) ("Twitter is a public forum for the purposes of the anti-SLAPP statute."); *Stossel v. Meta Platforms, Inc.*, 634 F.Supp.3d 743, 759 (N.D. Cal. Oct. 11, 2022) (noting first prong met because Facebook is a "publicly accessible websites where the public can view content that is posted.").

**Second**, there is simply no question that the January 6 event is a matter of public interest. *Albert v. Seal*, 2018 WL 1163852, at *4 (4th Dist. March 6, 2018) ("there is, of course, no question that political rallies and proposed legislation are matters of public interest under the anti-SLAPP statute"). Plaintiff concedes as much in her Complaint—she acknowledges that she "never in her wildest dreams imagined how something so uniquely American as free speech and the right to peacefully and lawfully assemble in accordance with the First Amendment would turn into an event marred by violence and unlawful behavior by some protestors in breaching the Capitol." SAC ¶ 75. This event is akin to other major national events, such as Presidential elections, rallies, and protests, which courts have considered matters of public interest for the purposes of anti-SLAPP. *See, e.g.*, *Browne v. McCain*, 611 F. Supp. 2d 1062, 1068 (finding 2008 presidential candidates and their energy policies were issues of public interest); *Royal Holdings Techs. Corp. v. IP Video Market Info Inc.*, 2020 WL 8225666, at *4 (C.D. Cal. Dec. 18, 2020) (finding efficacy of vaccine during pandemic of public interest).

### 2.    Plaintiff cannot show the probability of prevailing on claims.

"The burden then shifts to [Plaintiff] to establish a reasonable probability that it will prevail on its claim[s]." *Makaeff v. Trump Univ. LLC*, 715 F.3d 254, 261 (9th Cir. 2013). If an anti-SLAPP motion is "based on alleged deficiencies in the plaintiff's complaint"—like this one is—then it "must be treated in the same manner as a motion under Rule 12(b)(6) except that the attorney's fee provision of § 425.16(c) applies." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018). This motion asserts the same deficiencies

as those outlined in the motion to dismiss for failure to state a claim.  *See* Section IV *supra*.

Specifically, Plaintiff's defamation claim fails as a matter of law because: (1) Plaintiff has failed

to plead sufficient facts showing that a reasonable person would have read the Emergency News

Statement to refer to her; (2) Plaintiff failed to satisfy the requisite element of publication; (3)

Meta's Emergency News Statement is not "susceptible to a defamatory meaning," because it was

expressly directed at violent, not peaceful protestors.  *See* Section IV.A *supra*.  Moreover,

Plaintiff's claim fails for the additional reason that it is barred by Section 230.  *See* Section IV.B,

*supra*.

### 3.      Meta should be awarded fees.

Meta should be awarded its attorney's fees and costs under the anti-SLAPP statute.  In

order to deter the chilling of free speech, "a prevailing defendant on a special motion to strike

shall be entitled to recover his or her attorney's fees and costs." Cal. Civ. Proc. Code § 425.16(c).

Thus, it is well-settled that an award of attorney's fees and costs to a successful anti-SLAPP

movant is ***mandatory***.  *Ketchum v. Moses*, 24 Cal.4th 1122, 1131, 104 Cal.Rptr.2d 377, 17 P.3d

735 (2001) (emphasis added). "[A]bsent circumstances rendering an award unjust, the fee should

ordinarily include compensation for all hours reasonably spent, including those relating solely to

[obtaining] the fee [award]." *Kearney v. Foley and Lardner*, 553 F.Supp.2d 1178, 1181 (S.D. Cal.

2008); *New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090, 1115 (C.D. Cal. 2004) ("The statute is

broadly construed so as to effectuate the legislative purpose of reimbursing the prevailing

defendant for expenses incurred in extricating him or herself from a baseless lawsuit.").  Where

the court does not find that the "special motion to strike is frivolous or is solely intended to cause

unnecessary delay," the court must award reasonable attorney's fees. Cal. Civ. Proc. Code §

425.16(c)

Here, for the reasons explained above, Plaintiff's SAC is baseless.  The Court dismissed

Plaintiff's SAC on multiple grounds, and Plaintiff has made no meaningful effort to address any

of the deficiencies identified by the Court.  Instead, Plaintiff reiterates the same insufficient and

conclusory allegations, and wastes both Meta's and the Court's time and judicial resources by

filing a SAC.  On the other hand, Meta's anti-SLAPP motion is not "frivolous," which is defined

18

1   as "totally and completely without merit or for the sole purpose of harassing an opposing party."

2   Cal. Civ. Proc. Code § 128.5(b)(2).  To the contrary, Meta's motion should be granted, *see*

3   Section IV, *supra*.  Accordingly, Meta is entitled to its reasonable fees and costs.

4        **D.    Plaintiff Should Not Be Granted Leave To Amend.**

5        Leave to amend is inappropriate if "the pleading could not possibly be cured by the

6   allegations of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc).  Here,

7   leave to amend would be inappropriate for three reasons.

8        ***First***, as established above (*see* Section IV.A, *supra*), Plaintiff's lone remaining claim

9   suffers fatal deficiencies that she cannot overcome with further amendments.  ***Second***, Plaintiff's

10  claims will be barred by Section 230(c)(1) no matter what additional facts she pleads (*see* Section

11  IV.B, *supra*)— which is why courts generally deny leave to amend when "there is CDA

12  immunity."  *King v. Facebook, Inc.*, 572 F. Supp. 3d 776 (2021) (dismissing claims barred by

13  Section 230 with prejudice because "it would be futile for [Plaintiff] to try to amend the

14  claim[s]").  And ***third***, leave to amend is inappropriate after a successful anti-SLAPP motion.

15  *Smith v. Santa Rosa Press Democrat*, No. 11-CV-2411, 2011 WL 5006463, at *7 (N.D. Cal. Oct.

16  20, 2011) (finding because the purpose of anti-SLAPP is "to provide for a speedy resolution of

17  claims which impinge on speech protected by the First Amendment," "leave to amend is not

18  necessary or appropriate."); *Flores v. Emerich & Fike*, 2006 WL 2536615, at *10 (E.D. Cal. Aug.

19  31, 2006) ("To allow amendment after an anti-SLAPP motion to strike has been granted

20  eviscerates the purpose of the anti-SLAPP statute.").

21  **V.    CONCLUSION**

22       For the foregoing reasons, Meta respectfully requests that the Court dismiss or strike the

23  SAC with prejudice.

24  Dated: March 7, 2024                    ORRICK, HERRINGTON & SUTCLIFFE LLP

25

26                                    By:   ___*/s/ Jacob M. Heath*___

27                                          JACOB M. HEATH
                                          Attorney for Defendant
28                                          Meta Platforms, Inc.