UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENEVIEVE MAHONEY,<br><br>   Plaintiff,<br><br>  v.<br><br>META PLATFORMS, INC.,<br><br>   Defendant. | Case No. 22-cv-02873-AMO<br><br>**ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Re: Dkt. No. 134 |

Before the Court is Defendant Meta Platforms, Inc.'s ("Meta") motion to dismiss the Second Amended Complaint. The matter is fully briefed and suitable for decision without oral argument. Accordingly, the hearing set for July 11, 2024, was vacated. *See* Civ. L.R. 7-6. This order assumes familiarity with the facts and procedural history of the case, which were thoroughly discussed in the Court's Order Granting Motion to Dismiss (ECF 129). Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the Court hereby **GRANTS** Meta's motion, for the following reasons.

**I. DISCUSSION**

Meta pursues essentially two motions in a single filing: (1) a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), and (2) a special motion to strike under California Code of Civil Procedure section 425.16. The analysis regarding the motion to dismiss shapes the discussion on the special motion to strike, so the Court takes up the motion to dismiss first.

  **A. Motion to Dismiss**

Meta moves to dismiss the sole cause of action in the SAC, defamation per se, for failure to state a claim. Additionally, Meta moves to dismiss the SAC based on its purported immunity

under Section 230(c)(1) of the Communications Decency Act, 47 U.S.C. § 230 et seq. The Court need not reach the second question because Mahoney again fails to state a claim for defamation for the reasons stated below. In the interest of brevity, the Court does not here restate the legal standard for a motion to dismiss. *See* Order Granting Motion to Dismiss (ECF 129) at 4-5.

In the SAC, Mahoney reiterates her theory that the Emergency News Statement referred to all individuals present at the Capitol on January 6 who posted photos. She also continues to claim – without factual support – that the operator of the @fur.meme Instagram account saw the Emergency News Statement and recognized its defamatory meaning towards Mahoney.

"Defamation is an invasion of the interest in reputation." *Smith v. Maldonado*, 72 Cal. App. 4th 637, 645 (1999). A defamatory statement may be either written (libel) or oral (slander). Cal. Civ. Code §§ 44, 45, 46. To prevail on a claim for defamation per se, the plaintiff must prove that "a defendant published a false statement to another person or persons, that those persons reasonably understood the statements to be about the plaintiff, that the statements were defamatory on their face [], and that the defendant failed to use reasonable care to determine the truth or falsity of the statement." *Ellis v. Starbucks Corp.*, 2015 WL 5240042, at *4 (N.D. Cal. Sept. 5, 2015).

Mahoney's sole claim for defamation per se still fails for the three reasons highlighted in the Court's order dismissing the FAC: (1) "Mahoney fails to establish that Meta's Emergency News Statement specifically referred to her or was understood by any third party as referring to her" (Order at 7); (2) "Mahoney does not allege that a single person [i] saw the Emergency News Statement, much less understood its allegedly defamatory meaning towards her, or who [ii] legitimately read that allegedly defamatory meaning as applying to her" (*id.* at 8); and (3) "Mahoney fails to allege that any person would have reasonably 'understood the statement in the alleged defamatory sense' – i.e., that everybody who posted photos from the protest was a criminal" (*id.* at 9). Any one of these three reasons would be sufficient to warrant dismissal, but the Court addresses each in turn.

### 1.   Statement "of or concerning" Mahoney

To state a defamation claim, the statement on "which the claim is based must specifically refer to, or be 'of and concerning,' the plaintiff in some way." *Blatty v. N.Y. Times Co.*, 42 Cal. 3d

1033, 1042 (1986). "In order to satisfy this requirement, the plaintiff must effectively plead that the statement at issue either expressly mentions him or refers to him by reasonable implication." *Id.* at 1046 (citations omitted). Under the latter option of reference by reasonable implication, "a defamatory statement that is ambiguous as to its target not only must be capable of being understood to refer to the plaintiff, but also must be shown actually to have been so understood by a third party." *SDV/ACCI, Inc. v. AT&T Corp.*, 522 F.3d 955, 959 (9th Cir. 2008). Finally, where the purportedly defamatory statement refers to a large group of persons, California courts have determined that "plaintiffs cannot show that the statements were 'of and concerning them,'" especially where the group includes more than 25 members. *Blatty*, 42 Cal. 3d at 1046 (collecting cases).

Here, Mahoney concedes that she is not named in the Emergency News Statement. SAC ¶ 165. Mahoney instead claims the Emergency News Statement referred to her by implication because Meta stated that it would remove content that represented "promotion of criminal activity" (SAC ¶ 173); and because Meta removed Mahoney's photo and disabled her account, Meta evinced that the Emergency News Statement referred to Mahoney (SAC ¶¶ 166-67). In support of the "reference by reasonable implication," Mahoney points to the "flurry of posts" by @fur.meme to show that the "Instagram group and Furman community reasonably understood the Emergency News Statement to mean that Genevieve's 'Our Capitol' photo 'represents promotion of criminal activity.'" SAC ¶¶ 168-72.

The timeline of events invalidates Mahoney's theory of implication. Meta removed Mahoney's January 6 photo by "disabling and deleting her Instagram account" nearly a week later, on January 12, 2021. SAC ¶¶ 90-91. Thus, at the time of the Emergency News Statement, and at the time her schoolmates purportedly "understood" the Emergency News Statement to refer to Mahoney, Meta had not yet removed her photo. As of January 6, the Furman community could not have plausibly understood the Emergency News Statement as referring to Mahoney – i.e., as a protestor "whose photographs Meta then removed." SAC ¶ 155. Mahoney fails to establish that the Emergency News Statement was "of or concerning" her by reasonable implication.

Even if the timeline made sense, where the allegedly defamatory statement concerns a large group – in general, "any group numbering over twenty-five members – the courts in California and other states have consistently held that plaintiffs cannot show that the statements were of and concerning them." *Blatty*, 42 Cal. 3d at 1046 (collecting cases). As the Court already held, "Mahoney's claim fails because the Emergency News Statement refers to a group so large that it cannot be construed as 'of or concerning' her in any way." Order at 7 (citing *Blatty*, 42 Cal. 3d 1033, 1042); *see also Bartholomew v. YouTube, LLC*, 17 Cal. App. 5th 1217 (2017) (dismissing defamation claims where plaintiff provided no theory as to how the generalized statements on YouTube's Community Guidelines page were ascribed particularly to her). Mahoney fails to present any allegations to change this portion of the analysis, and she still fails to establish that the Emergency News Statement was "of or concerning" her.

Mahoney attempts to evade this conclusion by relying on a defamation case arising under Washington law. *See Miller v. Sawant*, 18 F.4th 328 (9th Cir. 2021).[1] In *Miller*, plaintiffs were police officers who claimed they were defamed by the defendant, a member of the Seattle City Council, through comments she made about a deadly police shooting in which plaintiffs were directly involved. *Id.* at 333. The defendant, a City Council member, told a crowd that the killing was a "brutal murder . . . a blatant murder at the hands of the police." *Id.* at 333. "Although [the defendant] had not identified Plaintiffs by name in her remarks, the complaint alleges that Plaintiffs' families, friends, and colleagues, as well as members of the general public, all knew that they were the officers who shot Taylor." *Id.* at 334. The Ninth Circuit noted that "although [the defendant]'s remarks appear aimed, at least in part, at the police generally, some of her language suggests that her words refer specifically to the officers who shot Taylor." *Id.* at 338. And although the defendant "did not identify Plaintiffs by name, . . . (1) her words can reasonably

---

[1] The Ninth Circuit noted, in relation to a heightened standard under Washington law applicable at the summary judgment stage, that defamation plaintiffs "need not plead the of-and-concerning element with convincing clarity. Instead, they 'need only plead sufficient facts to make it plausible – not probable or even reasonably likely – that a reader familiar with each Plaintiff would identify him as the subject of the statements at issue.' " *Miller v. Sawant*, 18 F.4th at 337-38 (quoting *Elias v. Rolling Stone LLC*, 872 F.3d 97, 105 (2d Cir. 2017)). Mahoney relies on this quote in an effort to lessen her burden at the pleading stage, but it is not particularly helpful in this analysis.

be understood as referring to the officers involved . . ., (2) readers and listeners knew that Plaintiffs were the officers involved in the shooting, and (3) those readers and listeners understood [defendant]'s remarks to refer to Plaintiffs." *Id.* at 340.

Unlike in *Miller*, where the at-issue remarks could only be understood as referring to a few individuals, including the plaintiffs, here, the Emergency News Statement refers to a group so large that it cannot be construed as "of or concerning" Mahoney. The facts of this case, moreover, plainly deviate from those presented in *Miller*, where the defendant was more plainly describing officers who had taken specific actions that led to a civilian's death. *Miller*, 18 F.4th at 340. The statements in the Emergency News Statement make no similar reference to Mahoney despite the SAC's conclusory statements to the contrary. *See* SAC ¶ 101. Ultimately, Mahoney fails to establish that the Emergency News Statement was "of or concerning" her at all.

### 2. Publication to a Third Party Who Understood it as Defaming Mahoney

California courts define "publication" as a "communication to some third person who understands both the defamatory meaning of the statement and its application to the person to whom reference is made." *Ringler Assocs. Inc. v. Maryland Cas. Co.*, 80 Cal. App. 4th 1165, 1179 (2000).

Mahoney argues that, contrary to Meta's contentions that no Furman student saw or recognized the Emergency News Statement, the allegations in the SAC demonstrate that the student who ran the @fur.meme account saw the Statement. SAC ¶¶ 104 ("@fur.meme and others in this Instagram group seized upon Facebook's statement since it *linked* the posting of photos at the U.S. Capitol with the 'promotion of criminal activity'"); ¶ 105 ("Genevieve's @fur.meme Instagram group made this direct connection" "[b]ased on Bickert and Rosen's Emergency News Statement," "because Genevieve had been one of only two Furman student protestors"); ¶ 107 ("@fur.meme's language infers a collective responsibility to report and hold 'accountable' 'violent' individuals," as does Meta's Emergency News Statement); ¶ 110 (Meta and @fur.meme both failed to differentiate between protestors who merely attended the rally and violent rioters).

Here, again, Mahoney fails to draw a nexus between (1) the Emergency News Statement and (2) the @fur.meme Instagram posts that called out her attendance at the Capitol on January 6,

5

2021. The fact that "@fur.meme's language infers a collective responsibility to hold 'accountable' 'violent' individuals" (SAC ¶ 107), and that Meta later disabled her account, simply does not support that anyone at her college actually saw the Emergency News Statement, much less attributed a defamatory meaning of "criminality" towards Mahoney. Importantly, none of Mahoney's allegations demonstrate the @fur.meme Instagram and Furman community "recognized" the Emergency News Statement as referring to her. Opp. at 4-5. None of the screenshots acknowledging Plaintiff's presence at the Capitol on January 6 says a single word about the Emergency News Statement – there is no plausible allegation that the Furman student who operated the @fur.meme Instagram account saw the Emergency News Statement, which, beyond being published to the Internet and general public, was published on Facebook, a separate social media platform. SAC ¶¶ 15, 98. Mahoney's allegation that @fur.meme recognized Meta's Emergency News Statement is flatly contradicted by the initial @fur.meme post, which indicates that the Furman student learned of Mahoney's attendance at the January 6 protest directly from Mahoney's own activity on Instagram account. SAC ¶ 110 ("@genmahoney19 attended this violent, pro-Trump event. This information is known by pictures [she] shared on [her] public Instagram account[]."). Mahoney thus repeats in the SAC her earlier failure to draw a nexus between, on the one hand, the Emergency News Statement, and on the other hand, the @fur.meme Instagram posts that identified Plaintiff as having attended events at the Capitol on January 6, 2021. Such failure is fatal to her claim.

### 3. Falsity or Susceptibility to a Defamatory Meaning

Plaintiff reiterates her argument that the Emergency News Statement is "false" because it "declares [] that Mahoney's 'Our Capitol' photo amounts to 'incitement' of 'violence' – which is a crime." Opp. at 7.

To state a claim for defamation, "defamatory meaning must be found, if at all, in a reading of the publication as a whole . . . [.] Defamation actions cannot be based on snippets taken out of context." *Crowe v. County of San Diego*, 608 F.3d 406, 443 (9th Cir. 2010). "The defamatory character of language is measured 'according to the sense and meaning . . . which such language may fairly be presumed to have conveyed to those to whom it was published.' " *Balzaga v. Fox*

*News Network, LLC*, 173 Cal. App. 4th 1325, 1337 (2009). If no "reasonable viewer could have reasonably understood the statement in the alleged defamatory sense, the matter may be decided as a question of law." *Id.*

Here, as in her FAC, Mahoney "fails to allege that any person would have reasonably 'understood the statement in the alleged defamatory sense' – i.e., that everybody who posted photos from the protest was a criminal." Order at 9; *Balzaga*, 173 Cal. App. 4th at 1337 (affirming ruling that no reasonable viewer of news program could have understood it to have defamatory meaning). As the Court noted, "Meta's statement does not accuse Mahoney of a crime because it does not refer to her at all." Order at 9. Mahoney has added nothing to fix this failure in her SAC.

In sum, Mahoney fails on all three prongs of the defamation analysis. The remaining cause of action must be dismissed.

### 4. Leave to Amend

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend "shall be freely given when justice so requires . . . and this policy is to be applied with extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (citation and quotation marks omitted). However, "[f]utility of amendment can, by itself, justify the denial of a motion for leave to amend." *Gonzalez v. Planned Parenthood of Los Angeles*, 759 F.3d 1112, 1116 (9th Cir. 2014) (citation omitted); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962).

The Court previously granted Mahoney leave to amend, and Mahoney has failed to address the fundamental problems identified by the Court for the reasons discussed above. *See* Order at 5-9. Thus, the Court finds that granting further leave to amend would prove futile and accordingly declines to permit another amended complaint.

### B. Anti-SLAPP Special Motion to Strike

Having dismissed Mahoney's state law claim without leave to amend, the Court turns to assess Meta's renewed special motion to strike. *Verizon Delaware, Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004). Meta moves to strike Mahoney's defamation claim under

California's anti-SLAPP statute, which permits early dismissal of lawsuits aimed at acts in furtherance of the right to speech.

### 1. Legal Standard

California's anti-SLAPP statute protects, among other things, any conduct "in furtherance of a person's right of free speech," including "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest." Cal. Code Civ. Proc. § 425.16(e). "Under California's anti-SLAPP statute, a defendant may bring a special motion to strike a cause of action arising from constitutionally protected speech or petitioning activity." *Barry v. State Bar of California*, 2 Cal.5th 318, 320 (2017); Cal. Code Civ. Pro. § 425.16.

California courts generally apply a two-step process for analyzing an anti-SLAPP motion. *Hilton v. Hallmark Cards*, 599 F.3d 894, 903 (9th Cir. 2010). "At the first step, the moving defendant bears the burden of identifying all allegations of protected activity, and the claims for relief supported by them." *Baral v. Schnitt*, 1 Cal. 5th 376, 396 (2016). Only "[i]f the court determines that relief is sought based on allegations arising from activity protected by the statute" is the second step reached. *Id.* At the second step, "the burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated." *Baral*, 1 Cal. 5th at 396; *see also Hilton*, 599 F.3d at 903. "A prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs." Cal. Code Civ. Proc. § 425.16(c)(1).

### 2. Applicability in Federal Court

Mahoney spends much of her Opposition arguing that California's anti-SLAPP statute is "inapplicable" because Congress did not "authorize States to prescribe rules of practice and procedure in diversity actions in federal courts." Opp. at 9-10 (citing *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010)). The Ninth Circuit has rejected this precise argument, finding that *Shady Grove* remains "reconcilable" with Ninth Circuit precedent applying California's anti-SLAPP statute in diversity actions. *CoreCivic, Inc. v. Candide Group, LLC*, 46 F.4th 1136, 1143 (9th Cir. 2022) (finding California's anti-SLAPP statute applies in

8

federal diversity actions). Indeed, the Ninth Circuit "has long held that [] California's anti-SLAPP law, Cal. Civ. Proc. Code § 425.16, appl[ies] to diversity jurisdiction proceedings in federal court, and that district courts may consider and grant special motions to strike brought under that law in such cases." *Fennell v. Becerra*, 2020 WL 9422373, at *4 (N.D. Cal. June 3, 2022); *Makaeff v. Trump Univ., LLC*, 736 F.3d 1180, 1182 (9th Cir. 2013) ("California's anti-SLAPP statute . . . supplements rather than conflicts with the Federal Rules."); *Simoni v. Am. Media, Inc.*, 673 Fed. Appx. 782 (9th Cir. 2017) (affirming dismissal of diversity action under anti-SLAPP). Accordingly, the Court considers Meta's anti-SLAPP motion to strike given this binding Ninth Circuit law.

### 3. First Prong – Protected Activity

"The first prong of the anti-SLAPP analysis involves two related inquiries: (1) whether the Complaint alleges activity protected by section 425.16 and (2) whether the cause or causes of action alleged arise from those activities." *Gunn v. Drage*, 65 F.4th 1109, 1120-21 (9th Cir. 2023). According to the Ninth Circuit, "where . . . an action directly targets the way a content provider chooses to deliver, present, or publish news content on matters of public interest, that action is based on conduct in furtherance of free speech rights and must withstand scrutiny under California's anti-SLAPP statute." *Greater Los Angeles Agency on Deafness, Inc. v. Cable News Network, Inc.*, 742 F.3d 414, 424-25 (9th Cir. 2014).

Mahoney's claim for defamation targets Meta's decision to deliver the Emergency News Statement regarding the January 6 events. The anti-SLAPP statute protects Meta's conduct because (1) Meta's decision to post a timely statement on its platform, a place open to the public, is an act that furthers the right to speak and (2) Meta's decisions relate to the events at the U.S. Capitol on January 6, 2021, which clearly constitute an issue of public interest. Mahoney presents no argument to the contrary. Meta's post on its own service occurred in a "place open to the public" because "websites [that] are accessible to the public," including Facebook, are considered "open to the public" for the purposes of the anti-SLAPP statute. *Jackson v. Mayweather*, 10 Cal. App. 5th 1240, 1252 (2017) (finding statements made on Facebook meet the definition of "public forum" for purposes of anti-SLAPP statute). Importantly, Mahoney concedes this very point as

1  her claim for defamation is focused on Meta's speech activity rather than on its role publishing the
2  speech of the @fur.meme account on another platform.  The Court concludes that Meta's
3  Emergency News Statement constitutes protected speech in satisfaction of the first prong of the
4  anti-SLAPP analysis.

### 4. Second Prong – Probability of Prevailing on Claims

After demonstrating that a plaintiff's claim is premised on the defendant's protected activity, "the burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated." *Baral*, 1 Cal. 5th at 396; *see also Makaeff v. Trump Univ. LLC*, 715 F.3d 254, 261 (9th Cir. 2013).  The court's inquiry at this stage "is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment." *Baral*, 1 Cal. 5th at 384-85.  If an anti-SLAPP motion is "based on alleged deficiencies in the plaintiff's complaint, the motion must be treated in the same manner as a motion under Rule 12(b)(6) except that the attorney's fee provision of § 425.16(c) applies." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018) (citation omitted).

Here, Mahoney relies on the arguments advanced regarding the sufficiency of her defamation claim.  Those arguments fell short of surviving the Rule 12(b)(6) standard for the reasons discussed above, and the arguments accordingly also fail here.  Mahoney fails to state a legally sufficient claim for defamation against Meta because: (1) Mahoney fails to plead sufficient facts showing that a reasonable person would have read the Emergency News Statement to refer to her; (2) Mahoney fails to satisfy the requisite element of publication; and (3) Meta's Emergency News Statement is not "susceptible to a defamatory meaning."  Accordingly, the Court **GRANTS** the special motion to strike Mahoney's state law claim for defamation.

### 5. Attorney's Fees

Meta's papers state that it "should be awarded fees," but Meta does not clearly request an award of fees at this stage.  *See* Mot. at 18-19.  The Court **DENIES** this request without prejudice for failure to comply with Civil Local Rule 54-5, which requires counsel to meet and confer prior to filing requests for attorney's fees.

## II. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Meta's motion to dismiss the SAC and **GRANTS** Meta's special motion to strike under California Code of Civil Procedure § 425.16. The Court **DISMISSES the action WITH PREJUDICE**.

**IT IS SO ORDERED.**

Dated: February 20, 2025

_____
**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**